# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARLITOS RICARDO PARIAS RAMALES, | ) ) ) | Case No. ED CV 26-00040 FMO |
| Petitioner, | ) ) | |
| v. | ) ) | **ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| SANTACRUZ, JR., et al., | ) ) | |
| Respondents. | ) ) | |

On January 6, 2026, Carlitos Ricardo Parias Ramales ("petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against Ernesto Santacruz, Jr., Director of the Los Angeles Field Office of Immigration and Customs Enforcement's ("ICE") Enforcement and Removal Operations division; Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); Pamela Bondi, Attorney General of the United States; and Fereti Semaia, Warden of the Adelanto Detention Facility, in their official capacities, as well as DHS and the Executive Office for Immigration Review ("EOIR") (collectively, "respondents"). (Dkt. 1, Petition at ¶¶ 20-25).

That same day, petitioner also filed an Ex Parte Application for a Temporary Restraining Order ("Application"), seeking his immediate release, or, in the alternative, an order requiring his release unless he is provided an individualized bond hearing before an immigration judge hearing pursuant to 8 U.S.C. § 1226(a) within seven days of the court's Order. (See Dkt. 4, Application at 1); (Dkt. 4-5, Proposed Order at ¶ 1). Petitioner also seeks an order enjoining respondents from

removing petitioner outside of this District pending final resolution of this case. (See Dkt. 4, Application at 1).

**BACKGROUND**

Petitioner, a citizen of Mexico, entered the United States without inspection over 20 years ago. (See Dkt. 1, Petition at ¶ 19); (Dkt. 4-2, Declaration of Margaret Hellerstein ("Hellerstein Decl.") at ¶ 14). He is married and has two U.S. citizen children. (Dkt. 4-2, Hellerstein Decl. at ¶ 14). Petitioner was initially arrested on October 21, 2025, following a "targeted enforcement traffic stop" conducted by ICE officers. (See id. at ¶¶ 6, 8). He was then charged by the U.S. Attorney's Office with assault on a federal officer. (Id. at ¶ 8). After this court granted petitioner bond in his criminal proceedings, petitioner was transferred to the Adelanto Detention Facility on November 24, 2025, (id. at ¶ 10), where he presently remains detained. (Dkt. 1, Petition at ¶ 12).

DHS issued a Notice to Appear ("NTA") to petitioner on November 27, 2025. (Dkt. 4-2, Hellerstein Decl. at ¶ 11).[1] Petitioner's NTA charged him with being "an alien present in the United States who has not been admitted or paroled[,]" and therefore subject to removal pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, et seq., which is codified at 8 U.S.C. § 1182(a)(6)(A)(i).[2] (See Dkt. 4-4, Exh. B, NTA at ECF 9). After petitioner's criminal charges were dismissed with prejudice on December 27, 2025, he filed a Motion to Redetermine Bond on December 28, 2025. (Dkt. 4-2, Hellerstein Decl. at ¶¶ 12-13). However, his motion was denied by the immigration judge, who concluded that she lacked jurisdiction notwithstanding the court's decision in Bautista v. Santacruz ("Bautista"), 2025 WL 3678485 (C.D. Cal. 2025). (Dkt. 4-2, Hellerstein Decl. at ¶ 13).

Petitioner alleges that his mandatory detention under § 1225(b)(2) violates the INA, and that he is entitled to the relief granted by the Bautista court, as a member of the nationwide class.

---

[1] Petitioner's counsel states in her declaration that DHS did not issue an NTA until November 27, 2025. (Dkt. 4-2, Hellerstein Decl. at ¶ 11). However, the NTA attached to petitioner's Application states "This Notice to Appear Supersedes the Notice to Appear issued on October 26, 2025." (See Dkt. 4-4, Exh. B, NTA at ECF 9).

[2] Unless otherwise indicated, all further section references are to Title 8 of the United States Code.

(See Dkt. 1, Petition at ¶¶ 26-31). In his Application, petitioner argues that preliminary relief is warranted because he is likely to succeed on the merits of his claim that he is not subject to the mandatory detention provision of § 1225(b)(2)(A). (See Dkt. 4-1, Memorandum in Support of Application ("Memo") at 17).[3]

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions or temporary restraining orders ("TRO"). See Fed. R. Civ. P. 65(a) & (b). The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)). The standards for a temporary restraining order and a preliminary injunction are the same. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same). "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20, 129 S.Ct. at 374. Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element

---

[3] In his Application, petitioner further argues that his continued detention violates his substantive and procedural due process rights. (Dkt. 4-1, Memo at 11-21). However, petitioner did not raise any constitutional claims in his Petition. (See, generally, Dkt. 1, Petition).

may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. The last two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

**DISCUSSION**

Petitioner contends that as a Bautista class member his detention is governed by § 1226(a), rather than § 1225(b)(2). (See Dkt. 1, Petition at ¶¶ 26-31). Respondents do not contest this issue. (See Dkt. 8, Response at 1) ("Respondents acknowledge that Petitioner's claim in this action as to his entitlement to a bond hearing appears to be subject to the Bautista judgment and to any applicable appellate proceedings relating to it. To the extent Petitioner seeks an order requiring such a bond hearing here, it should be consistent with what Courts in this District have generally ordered in similar cases, which is to require a 8 U.S.C. § 1226(a) hearing be held where Petitioner has the burden of proof to show he is not a danger or flight risk."). In short, respondents do not oppose petitioner's request for a bond hearing, so long as the court's order does not shift the burden to the government in any § 1226(a) hearing. (Id. at 1, n. 1). Because burden-shifting is not a component of the final judgment entered in Bautista,[4] and because the government otherwise does not oppose the Application, the court will grant petitioner's Application as set forth in this Order.

I.   LIKELIHOOD OF SUCCESS ON THE MERITS.

The Bautista court certified a nationwide Bond Eligible Class, comprised of "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not

---

[4] While petitioner continues to argue in his Reply that the government must bear the burden at any hearing to determine detention of petitioner, (see Dkt. 9, Reply at 5), the authorities cited for this proposition, see Eddy C.S. v. Chestnut, 2026 WL 74025 (E.D. Cal. 2026); Prem S. v. Warden of Golden State Annex Det. Facility, 2025 WL 3724854 (E.D. Cal. 2025), are unpersuasive. In both cases, the petitioners had been previously detained and then released by the government – facts critical to those cases which are not present here.

be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination. 2025 WL 3288403, at *9. On December 18, 2025, the Bautista court issued a declaratory judgment, finding that the Bond Eligible Class members are detained under § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are therefore "entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." 2025 WL 3678485, *1 (C.D. Cal. 2025).

Petitioner has shown that he is likely a member of the Bond Eligible Class because he (1) entered the United States over 20 years ago without inspection; (2) was not apprehended upon arrival; and (3) is not being detained under § 1226(c), § 1225(b)(1), or § 1231. (See Dkt. 1, Petition at ¶¶ 5(a)-(c)). As part of the Bond Eligible Class, petitioner is entitled to consideration for release under § 1226(a), but has not yet been given a bond hearing. (See Dkt. 1, Petition at ¶ 31); (Dkt. 4-2, Hellerstein Decl. at ¶ 13). Thus, petitioner is likely to succeed on the merits of his claim that respondents have violated the INA and improperly subjected him to mandatory detention without a bond hearing. See, e.g., Jean v. Bondi, 2025 WL 3500562, *2 (W.D. Wash. 2025) ("As part of the class, Petitioner is entitled to consideration for release on bond under 8 U.S.C. § 1226(a) and denial of consideration violates the INA.").

II. LIKELIHOOD OF IRREPARABLE HARM.

Petitioner contends that he will suffer irreparable harm in the absence of a TRO as he will continue to be unlawfully detained under § 1225(b)(2) without a bond hearing. (Dkt. 4-1, Memo at 22). Again, respondents do not oppose. (See, generally, Dkt. 8, Response). Under the circumstances, the court finds that petitioner's continued detention without a bond hearing constitutes immediate and irreparable injury, as this violates petitioner's statutory rights under § 1226(a).[5] See Menjivar Sanchez v. Wofford, 2025 WL 3089712, *9 (E.D. Cal. 2025) ("As other

---

[5] As noted earlier, petitioner raised constitutional arguments in his Application, (Dkt. 4-1, Memo at 11-21), despite not having raised a constitutional challenge in his Petition. (See, generally, Dkt. 1, Petition). For the purposes of this preliminary relief, it will suffice to note that petitioner's mandatory detention nonetheless raises serious constitutional concerns that support his argument as to irreparable harm. See Zadvydas v. Davis, 533 U.S. 678, 690, 121 S.Ct. 2491, 2498 (2001)

courts that have faced this issue have explained, the violation of Petitioner's statutory rights causes immediate and irreparable injury.") (internal quotation marks omitted).

III.   BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

Petitioner contends that the final two merged factors weigh overwhelmingly in his favor. (See Dkt. 4-1, Memo at 22-23). Respondents do not oppose. (See, generally, Dkt. 8, Response). Under the circumstances, the balance of equities and the public interest factors also weigh in favor of petitioner. See, e.g., Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws[,] . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Ex Parte Application **(Document No. 4)** is **granted** as set forth in this Order.

2. Respondents shall release petitioner or, in the alternative, provide petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within **seven (7) days** of this Order.

---

("The Fifth Amendment's Due Process Clause forbids the Government to 'deprive' any 'person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects."). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where "the alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted).

1     3.  Respondents shall file with the court a Notice of Compliance within twenty-four (24) hours of either releasing petitioner and/or providing petitioner with an individualized bond hearing.

      4.  If petitioner is again placed into detention in this District following proceedings in this case, respondents shall not transfer or remove petitioner from this District pending final resolution of this case, or unless executing a final order of removal issued against petitioner.

      5.  Given that the standard for granting a TRO and preliminary injunction are the same, see Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7, the court will construe petitioner's Application as an application for a preliminary injunction ("PI Application").

      6.  Respondents shall file their opposition to the PI Application by no later than **January 26, 2026**.  Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the PI Application.

      7.  Petitioner shall file his Reply in support of his PI Application by no later than **January 29, 2026**.

      8.  The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the PI Application or take the PI Application under submission.

Dated this 22nd day of January, 2026.

                                                  /s/
                                Fernando M. Olguin
                         United States District Judge